## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

THE UNITED STATES OF AMERICA,       :      No: 5:15-CV-81 (LEAD)
FOR THE USE AND BENEFIT OF                 c/w No. 5:15-cv-1744 (MEMBER)
JOHN PAQUIN D/B/A ARMADILLO
CONSTRUCTION, *et. al*               :      JUDGE DONALD E. WALTER

VERSUS                               :      MAGISTRATE JUDGE KAREN HAYES

INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA *et al.*       :

### MEMORANDUM RULING

Before the court are two motions to dismiss, both of which were filed by DSCH Capital

Partners, LLC d/b/a Far West Capital ("Far West").[1]  The first motion seeks dismissal of the

third-party demand filed against Far West by Insurance Company of the State of Pennsylvania

("ICSP"). [Doc. #27].  The second motion seeks dismissal of the amended counterclaim filed

against Far West by Hypower, Inc ("Hypower").  [Doc. #61].

For the following reasons, both motions, [Docs. ##27, 61], are **GRANTED IN PART AND**

**DENIED IN PART.**

---

[1] Before these two cases were consolidated, various counterclaims, third-party demands, and
interventions were filed in each case.  In this order, the court will simply refer to the parties by name, and
not indicate their capacity as a "plaintiff," "defendant," "counter-defendant," etc.  Additionally, unless
otherwise specified, the docket entries cited herein refer to the entries in the lead case, bearing docket
number 5:15-cv-81.

# I. BACKGROUND

## A. The Project

This consolidated case concerns a federal construction project at the Overton Brooks Veterans Administration Medical Center in Shreveport, Louisiana ("the project"). [Doc. #66, p. 3, ¶ 11]. The purpose of the project was to install solar carport structures. *Id.* Hypower, the general contractor for the project, subcontracted with Crider Americas Solar, LLC ("Crider"), to design, manufacture, engineer, and install the solar carports. *Id.*; [*see also* Doc. #57-1, pp. 2–19]. Crider later entered into its own subcontract with Mr. John Paquin ("Paquin"), and his sole proprietorship Armadillo Construction, "for superintendent and project management work as well as the provision of labor for the installation of solar panels on the project." [Doc. #1, pp. 2–3, ¶ 8; *see also* Doc. #1-2]. Crider began its on-site work in September of 2013. [Doc. #66, p. 4, ¶ 15]. Hypower became dissatisfied with Crider's performance, and terminated Crider in January of 2014. [Doc. #57, p. 5, ¶ 11].

After terminating Crider, Hypower began receiving "sworn statements of account" from Crider's sub-subcontractors and suppliers, all of whom sought payment directly from Hypower. [Doc. #57, p. 6, ¶ 13]. Under the terms of the Hypower–Crider Subcontract, Crider's sub-subcontractors and suppliers could send a sworn statement of account to Hypower in the event that Crider failed to timely pay for work or services. [Doc. #57-1, p. 7, art. VI.G]. After receiving such a claim, Hypower would then send written notice of the claim to Crider, who would have one week to object to the creditor's statement. *Id.* If Hypower elected to pay the creditor, Hypower could then seek full reimbursement from Crider. *Id.* In keeping with this procedure, Hypower forwarded several sworn statements of account to Crider with instructions to

-2-

either consent or object to the payment request. *Id.* One sworn statement was submitted by Paquin, Crider's contracted superintendent, who requested additional payment on top of the amount he had already received. *Id.* at 9–10; [*see also* Doc. #57-1, pp. 37–38]. When Hypower contacted Crider to discuss the amount Paquin claimed he was due, Crider allegedly advised Hypower that Paquin's statement was incorrect and directed Hypower not to issue any additional payments. [Doc. #57, pp. 10–11]. Hypower claims that it did not pay Paquin because of Crider's objection. *Id.* at 11.

**B. Crider's Assignment of Invoices to Far West**

In September of 2011, well before the project was underway, Crider entered into a "purchasing agreement" with Far West, a Texas limited liability company. [Doc. #66, p. 3, ¶ 9]. Far West describes the nature of its business as "provid[ing] working capital funds to companies, primarily through accounts receivable factoring."[2] *Id.* at 2, ¶ 8. The purchasing agreement between Far West and Crider provided that, "[u]pon the sale and assignment of any account, Far West would advance funds to Crider, and in return would become the sole and absolute owner of the account in question." *Id.*

Far West claims that Crider assigned it all invoices from the project. *Id.* at 4–5. Far West further alleges that it notified Hypower of Crider's assignment in October of 2013. *Id.* at 4, ¶ 12. According to Far West, "[f]rom the date of the notice of assignment, Hypower understood that all accounts and payment rights generated by Crider on the Overton-Brooks project belonged to Far West, as assignee, and Far West expected payment in full for the work and services furnished by

---

[2] Factoring is "[t]he buying of accounts receivable at a discount." *Factoring*, BLACK'S LAW DICTIONARY (10th ed. 2014). "The price is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable." *Id.*

Crider on the Overton Brooks project."[3]  *Id.*

Far West claims that, on October 31, November 15, and November 27, 2013, two of its employees placed telephone calls to Hypower's project manager, Joshua Kuphal ("Kuphal"), during which Crider's invoices were allegedly discussed.  *Id.* at 5, ¶ 17.  Far West claims that it initiated these phone calls pursuant to its "internal due diligence practices," by which "Far West typically 'pre-verifies' or 'pre-confirms' accounts, or demands other assurances directly from its clients' customers, before purchasing an account."  *Id.*, ¶ 16.  Far West asserts that it decided to purchase two of Crider's invoices as a result of the statements Kuphal made during the calls.  *Id.* at 4–5.  Specifically, Far West alleges that Kuphal assured Far West's representatives: (1) that Crider had performed (and Hypower had approved) all of the work listed in the invoices; (2) that the amounts due to Crider listed on the invoices were accurate; (3) that the project was in good standing; and (4) that "the invoices would be paid in full and the amounts identified would not be reduced as a result of any claims against Crider for damages, back-charges, or other offenses."  *Id.* at 5, ¶ 17.

Hypower acknowledges that Kuphal spoke to Far West's representatives.  [Doc. #57, p. 8, ¶ 18].  However, Hypower denies that Kuphal made the promises or representations that Far West claims he did. [Doc. #73, p. 4, ¶ 19].  Furthermore, Hypower claims that Far West's calls were designed to trick Hypower into waiving its defenses to payment under the Hypower–Crider Subcontract.  [Doc. #57, pp. 8–9, ¶¶ 18–19].

---

[3] Article XVI of the Hypower–Crider Subcontract expressly prohibited Crider from assigning its invoices without the prior written consent of Hypower.  [Doc. #57, p. 3, ¶ 9; *see also* Doc. #57-1, p. 13]. According to Hypower, its consent was neither sought nor obtained in this case.  *Id.*

**C. Lawsuits**

### 1. Far West's Breach-of-Contract Suit

On January 27, 2014, shortly after Crider's termination from the project, Far West filed suit against Hypower in the 345th Judicial District Court in and for Travis County, Texas. *See DSCH Capital Partners, LLC, d/b/a Far West Capital v. Hypower Inc., et al.,* Dkt. No. 5:15-cv-1744 (W.D. La.) (hereinafter cited to as the "*Far West Suit*"), Doc. #1-1.[4]  Therein, Far West sought the full unpaid balance of Crider's invoices from Hypower. *Id.*  Hypower, which is a Florida corporation, later removed the matter to the United States District Court for the Western District of Texas, invoking diversity jurisdiction. *Far West Suit*, Docs. ##1, 105, 106.

Far West has amended its complaint three times, most recently on August 12, 2015. [Doc. #66].  In its Third Amended Complaint, Far West argues that the above-described telephone conversations were, in fact, "a series of separate oral agreements" by which Hypower obligated itself to pay the full amount of Crider's invoices to Far West, without any reductions or offsets. *Id.* at 6–7.  Accordingly, Far West argues that Hypower is liable for breach of those oral agreements. *Id.*  Far West also states claims for promissory estoppel; fraud by non-disclosure; affirmative misrepresentation and common-law fraud; negligent misrepresentation; and vicarious liability. *Id.* at 7–12.

---

[4] Kuphal was also named personally in the Far West suit, but he has been in and out of the litigation ever since. On March 19, 2014, on motion from Far West, all claims against Kuphal were withdrawn, without prejudice, via a notice of non-suit. *See Far West Suit*, Doc. #1-5.  Upon removal to federal court, Far West reasserted claims against Kuphal in its First Amended Complaint. *Far West Suit*, Doc. #16.  Kuphal then moved to dismiss the claims against him for lack of personal jurisdiction. *Far West Suit*, Doc. #39.  Far West did not oppose the motion, and the claims against Kuphal were dismissed, without prejudice. *Far West Suit*, Doc. #55.  In its Third Amended Complaint, Far West has again added Kuphal as a defendant. [Doc. #66].  Kuphal has responded with a "special appearance and motion to dismiss," [Doc. #74], which the court will address in a separate ruling.

### 2. Paquin's Miller Act Suit

Because the project at issue here was a federal public work, it was subject to the terms of the Miller Act, 40 U.S.C. §§ 101 *et seq.*  The Miller Act requires that the general contractor on a federal construction project obtain a payment bond from a surety for the benefit of all suppliers of labor or materials. 40 U.S.C. § 3131(b)(2).  Suppliers of labor or materials that claim they are owed payment are authorized to bring a civil action directly against the payment bond, provided they comply with the Miller Act's notice requirements. 40 U.S.C. § 3133(b)(1)–(2).  Such claims must be brought in the federal district court "for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. § 3133(b)(3)(B).

In the instant case, Hypower obtained its payment bond from ICSP.  [Doc. #1, p. 2, ¶ 7; *see also* Doc. #1-1].  On January 14, 2015, Paquin, in his capacity as Crider's subcontractor, filed a Miller Act complaint against ICSP, seeking full payment for the work and services he rendered to Crider.  [Doc. #1].  Because the project was performed in Shreveport, Louisiana, Paquin properly brought his Miller Act suit in the Western District of Louisiana.

### 3. Transfer and Consolidation

In May of 2015, the Far West suit was transferred to the Western District of Louisiana from the Western District of Texas. *Far West Suit*, Doc. #81.  Hypower moved for the transfer on the grounds that the Far West suit and the Miller Act suit were intertwined and involved many of the same issues, witnesses, and claims. *Id.*  Therefore, Hypower argued that, because the Miller Act suit could only be litigated in Louisiana and could not be transferred to Texas, then the Far West suit should be transferred to Louisiana to avoid duplicative litigation. *Id.*  Far West objected on various grounds, but the Texas court agreed with Hypower and transferred the action.

-6-

*Id.* After the transfer, the two suits were consolidated over Far West's objection, and the Miller Act suit was designated as the lead case. [Doc. #51].

### D. Hypower's Counterclaim and ICSP's Third-Party Demand

Hypower has filed several claims of its own in the Far West suit, including a third-party complaint against Crider, a third-party complaint against Paquin, and a counterclaim against Far West. In the most recent iteration of its counterclaim against Far West, Hypower argues that Far West committed fraud by non-disclosure during its telephone conversations with Kuphal because it failed to disclose its existing relationship with Crider, its expectation that it would be paid in full, and the fact that the calls were being recorded. [Doc. #57]. Hypower argues that, because Far West claims that Crider assigned it its payment rights under the Hypower–Crider Subcontract, then Far West is subject to *all* of the terms of that Subcontract, including its indemnity clause. *Id.* at 21–22.

In the Miller Act suit, ICSP has also filed a counterclaim against Paquin, a third-party complaint against Crider, and a third-party complaint against Far West. [Doc. #16]. In the third-party complaint against Far West, ICSP argues that, because it is Hypower's surety, it is entitled to assert any claims that Hypower has or may have. *Id.* at 13–16, 18–20. As such, ICSP asserts claims identical to those asserted by Hypower in the Far West suit. *Id.*

## II. LAW & ANALYSIS

In the motions presently before the court, Far West first argues that ICSP lacks standing to bring claims on behalf of Hypower, and therefore its third-party complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. [Doc. #27]. Far West also argues that both ICSP and Hypower fail to state claims

upon which relief may be granted for fraud by nondisclosure or indemnity, such that dismissal of these claims is appropriate under Rule 12(b)(6).  [Docs. ##27, 61].[5]

## A. Motion to Dismiss for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

Far West argues that ICSP lacks standing to bring certain claims in the Miller Act suit because Hypower itself has already directly asserted the same claims in the Far West suit. [Doc. #27-1, p. 3].  Therefore, Far West claims that this court lacks subject matter jurisdiction over ICSP's claims.  *Id.*  Alternatively, Far West argues that ICSP's claims should be dismissed under the "first to file" rule, whereby a court presented with claims that are substantially identical to those in a pending case should defer to the court addressing the earlier claims.  *Id.* at 4, n. 3.

Standing is an issue of subject matter jurisdiction that must be decided before the merits of a case.  *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 303 (5th Cir. 2001) (citation omitted).  Far West argues that ICSP lacks "prudential" standing, rather than "Article III" standing.[6] "Prudential standing requirements exist in addition to the immutable requirements of Article III as an integral part of judicial self-government."  *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579

---

[5] Far West makes no argument that the fraud by nondisclosure claims fail to meet the heightened standard for pleading fraud as set out in Fed. R. Civ. P. 9(b).  To the extent a ruling is required on that issue, the court finds that Hypower and ICSP have alleged fraud with the requisite particularity under Rule 9(b).

[6] "Article III" (or "Constitutional") standing requires that the plaintiff present a "case or controversy" within the meaning of Article III, Section 2 of the United States Constitution.  *Sprint Commc'ns Co., LP v. APCC Serv., Inc.* 554 U.S. 269, 273 (2008).  In order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact; (2) causation; and (3) redressability.  *Id.* at 273–74 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  The elements of constitutional standing do not appear to be in dispute here, as Far West does not mention them at all. [Doc. #27-1, pp. 3–4].  Nevertheless, the court finds that ICSP meets the requirements of Article III standing.  *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) (noting that the court had an 'independent obligation" to determine Article III standing even though defendant only made a prudential standing argument).  ICSP's allegations—*i.e.* that Far West's dealings with Hypower caused ICSP to potentially incur liability to Paquin, and that recovery from Far West would cure that injury—present a "case or controversy" for the court to decide.  [Doc. #16, pp. 14–15, 18–20].

-8-

F.3d 533, 539 (5th Cir. 2009) (internal quotation marks omitted).  "One principle of prudential standing requires that a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Superior MRI Serv., Inc. v. Alliance Healthcare Serv., Inc.*, 778 F.3d 502 (5th Cir. 2015) (quoting *United States v. Johnson*, 632 F.3d 912, 919–20 (5th Cir. 2011)).

When a surety is sued under the Miller Act, the surety's liability "is determined by reference to all agreements between the principal and persons supplying labor and materials to the construction project."  *United States ex rel. Fireman's Fund Ins. Co. v. Frank Briscoe Co., Inc.*, 462 F. Supp. 114, 116 (E.D. La. 1978).  "[T]he surety generally stands in the shoes of its principal with regard to the overall course of dealing that has taken place between the principal and a subcontractor, even though the surety was not a party to this course of dealing."  *Id.* at 117 (citing *United States ex rel Westinghouse Elec. v. James Stewart Co.*, 336 F.2d 777 (9th Cir. 1964)); *see also United States ex rel. Jack Daniels Constr. v. Liberty Mut. Ins. Co.*, Case No. 8:12-cv-2921, 2015 WL 9460115 at (M.D. Fla. Dec. 28, 2015).  Accordingly, the court rejects Far West's prudential-standing argument, because ICSP (the surety) has its own legal right to assert claims on behalf of Hypower (the principal) in the Miller Act suit.  *Fireman's Fund*, 462 F. Supp. at 116.  Furthermore, Far West cites no authority for its proposition that when the principal asserts a claim, the surety loses the right to assert the same claim.  To the contrary, it appears to be well established in Miller Act case law that counterclaims and third party demands may be asserted jointly by the principal and the surety.  *See, e.g., United States ex rel. A.V. DeBlasio Constr., Inc. v. Mountain States Constr. Co.*, 588 F.2d 259 (9th Cir. 1978) (contractor and surety, both named as defendants, jointly filed counterclaims and third-party complaints

against plaintiff and its surety); *United States ex rel. Gen'l Elec. Co. v. H.I. Lewis Constr. Co.*, 375 F.2d 194 (2d Cir. 1967) (contractor and surety jointly filed third-party demand against plaintiff's surety); *Limerick v. T.F. Scholes, Inc.*, 292 F.2d 195 (10th Cir. 1961) (contractor and surety jointly filed third-party indemnity claim against alleged indemnitor).

The court also rejects Far West's reliance on the "first to file" rule. "The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *see also West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). This "first to file" rule "is grounded in principles of comity and sound judicial administration." *Save Power*, 121 F.3d at 950. Far West argues that the rule mandates that ICSP's third-party complaint in the Miller Act suit should be dismissed, because the claims asserted therein are identical to those previously asserted by Hypower in the Far West suit. [Doc. #27-1, p. 4, n. 3]. But the Fifth Circuit has made clear that courts are not to apply the "first to file" rule this way. A district court applying the rule does not *dismiss* a related action, it *transfers* the related action to the court or judge presiding over the first action, who then determines whether the subsequently filed action should proceed. *Cadle Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). Here, the judge presiding over the Texas action has already transferred that case to the Western District of Louisiana, and the suits have been consolidated. Thus, there is no reason to apply the "first to file" rule in this case. *Cf. West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985) ("The concern [of the "first to file" rule] manifestly is to avoid the waste of duplication, to avoid

-10-

rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.").

Accordingly, to the extent Far West seeks dismissal of ICSP's third-party complaint due to lack subject matter jurisdiction, such relief is **DENIED**.

## B. Motions to Dismiss For Failure to State a Claim Under Rule 12(b)(6)

A motion filed pursuant to Rule 12(b)(6) challenges the sufficiency of a plaintiff's allegations. When ruling on a 12(b)(6) motion, the court accepts the complaint's factual allegations as true and construes all reasonable inferences in a light most favorable to the nonmoving party. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 652, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Although the court must accept as true all factual allegations set forth in the complaint, courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 556 U.S. at 664 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

### 1. Applicable State Law

Hypower and ICSP relied on different states' laws in their respective claims against Far West.  Specifically, Hypower stated its claim under Texas law, [Doc. #57, p. 20, ¶ 74, n. 23], whereas ICSP stated its claim under Louisiana law.  [Doc. #16, p. 19, ¶ 79, n. 22].  However, Hypower began citing to Louisiana law in its response to Far West's motion to dismiss. [Doc. #63, pp. 7–10].  The court requested that Hypower and ICSP fully explain the specific legal basis for their claims in supplemental briefing.  [Doc. #69].

In response, Hypower and ICSP asserted, for the first time, that Florida law should apply to all claims in this suit because the Hypower–Crider Subcontract contains a Florida choice of law provision.  [Doc. #70, pp. 4–5].  Alternatively, Hypower and ICSP assert that the substantive law of Louisiana, the forum state, should apply under the *Erie* doctrine. *Id.* at 5–8.  Far West disagrees, and asserts that Texas law, the law of the original forum, should apply. [Doc. #71, pp. 2–4].  However, all parties agree that a choice of law analysis is largely unnecessary, as Texas and Louisiana law do not conflict with each other with respect the claims before the court, *i.e.* fraud by nondisclosure and assumption of an indemnity obligation.  [Doc. #70, pp. 5–8; Doc. #71, p. 4].

The court finds that Florida law does not apply to the issues under consideration.  The parties have been litigating Hypower's counterclaim and ICSP's third-party complaint for quite some time, and not once was Florida law invoked before this court's request for clarification. Hypower and ICSP's repeated reliance on other states' laws suggests that the parties did not consider Florida law to be applicable, especially given that neither party has ever invoked the provision of the Hypower-Crider Subcontract requiring that all suits arising thereunder will be

litigated in Broward County, Florida. *Cf. Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004) (finding that a Massachusetts choice of law provision was properly enforced because the parties clearly contemplated that Massachusetts law would apply). Moreover, the choice of law provision at issue here only mandates that the Hypower-Crider Subcontract "shall be construed and enforced with and under" the laws of Florida; it does not mandate that any claim in any way related to that Subcontract, even those asserted by parties other than Hypower or Crider, will be subject to Florida law. [Doc. #70-1, p. 18, ¶ XXXI.G]. As the Fifth Circuit has explained, "[n]arrow choice of law provisions are to be construed narrowly." *Thompson and Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 433 (5th Cir. 1996). Tort claims that are separate from a contract and its enforcement are not subject to a contract's choice of law provision. *Id.* Here, Hypower and ICSP's fraud claims sound in tort, and thus Florida law does not apply to them. *Id.*; *see also Caton v. Leach Corp.*, 895 F.2d 939, 943 (5th Cir. 1990) (choice of law provision did not apply to related tort claim of breach of duty of good faith and fair dealing). As for the indemnity claims, the question of whether Crider owes indemnity under the terms of the Hypower-Crider Subcontract (which would require construction and enforcement) is entirely separate from the question of whether Far West, in purchasing Crider's invoices, also assumed Crider's indemnity obligations. As such, the argument that Far West is liable for indemnity based on its status as Crider's assignee is not subject to the Florida choice of law provision either.

The court further finds that Texas law applies to the claims in the Far West suit. Because the Far West suit was removed to the Western District of Texas based on diversity jurisdiction, the Texas court was obliged to apply Texas substantive law pursuant to the *Erie* doctrine. *See,*

*e.g., Lockwood Corp. v. Black*, 669 F.2d 324, 327 (5th Cir. 1982).  The Far West suit was then transferred to this court, but, importantly, the transfer was made under 28 U.S.C. § 1404(a). *Far West Suit*, Doc. #81, pp. 6–18.  As that statute provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  When a diversity case is transferred under § 1404(a) to a court in a different state, the transferee court must apply the substantive law of the transferor court's state.  *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990) (superseded by statute on other grounds as stated in *Yelton v. PHI, Inc.*, 660 F.3d 577, 580 n.3 (5th Cir. 2012)).  Accordingly, the fact that the Far West suit is now being litigated in the Western District of Louisiana does not make Louisiana law applicable to the claims therein.

Nevertheless, the court agrees with the parties that Texas and Louisiana law do not conflict with respect to fraud by nondisclosure and assumption of indemnity obligations, and thus a full conflict-of-laws analysis is unnecessary.  [Doc. #70, pp. 5–8; Doc. #71, p. 4].  As explained more fully below, the relevant law of Texas and Louisiana is similar enough that the court would reach the same result under the law of either state.

### 2. Fraud by Nondisclosure

In order to prove fraud by nondisclosure in Texas, the plaintiff must establish:

> (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge.

*E.g.*, *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.—Dallas 2013, pet. denied) (citing *Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010, no pet.)). "There must be a duty to disclose to bring an actionable claim for fraud by nondisclosure." *E.g., Hydradyne Hydraulics, LLC v. Power Eng'g and Mfg. Ltd.*, No. 3:09-CV-1577-L, 2011 WL 1514997 at *7 (N.D. Tex. Apr. 20, 2011) (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008)). "[S]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (citations omitted). Whether a duty to disclose exists "is a question of law for the court to decide." *Hydradine*, 2011 WL 1514997 at *7 (citing *Bradford*, 48 S.W.3d at 755).

As previously stated, Hypower's claim of fraud by nondisclosure is based on Far West's phone calls to Kuphal.[7] Hypower alleges that Far West's representatives failed to disclose that the calls were being recorded, that Far West was advancing specific amounts to Crider, or that Far West believed it was the intended beneficiary of Hypower's payments to Crider. [Doc.#57, pp.19–20, ¶¶ 72–73]. According to Hypower, Far West had a duty to disclose this information, because Far West's "partial disclosure" that it was seeking to "confirm" invoices left Kuphal with a false impression of what that "confirmation" entailed. Stated differently, Hypower argues that Far West had a duty to tell Kuphal that such "confirmation" might later bind Hypower into paying Far West for Crider's work regardless of the terms of the Hypower–Crider Subcontract. *Id.* at 19–20, ¶¶ 73–74.

---

[7] In the Miller Act suit, ICSP makes the same arguments as Hypower. [Doc. #16, pp. 18–20]. Accordingly, the court's analysis applies equally to that of ICSP.

Far West argues that there are no facts suggesting that Far West owed a legal duty to disclose information to Hypower. [Doc. # 27-1, pp. 5–8]. The court disagrees. Texas courts have consistently held that a duty to disclose may be found

> (1) when the parties have a confidential or fiduciary relationship; (2) *when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth*; (3) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue; or (4) *when one party makes a partial disclosure and conveys a false impression, which gives rise to a duty to speak.*

*Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 836 (Tex. App.—Houston [1st Dist.], Aug. 13, 2015, no pet.) (emphasis added) (citing *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App.—Houston [14th Dist.] 2010, no pet.)).  Here, Hypower does not allege that its relationship with Far West was confidential or fiduciary in nature,[8] nor that Far West failed to disclose new information that made an earlier representation untrue.  Hypower does allege that Far West voluntarily disclosed that it sought to "confirm" Crider's invoices, and that this partial disclosure created a false impression, giving rise to a duty to tell the whole truth.  According to Hypower, Far West's representatives purposefully hid the fact of the existing factoring arrangement with Crider and the fact that the calls were being

---

[8] In *Bradford v. Vento*, the Texas Supreme Court appeared to cast doubt on whether a general duty to disclose information may exist in an arm's-length business transaction despite the absence of a confidential or fiduciary relationship. *See* 48 S.W.3d 749, 755 (Tex. 2001). But, as the Fifth Circuit has recognized, courts continue to find a duty to disclose in some such situations. *See United Teacher's Associates v. Union Labor Life Ins. Co.*, 414 F.3d 558, 563–68 (5th Cir. 2005) (discussing the inconsistent results reached by state and federal courts after *Bradford*). This court is persuaded by several decisions which have held that *Bradford* does not limit the duty to disclose to confidential and fiduciary relationships. *See, e.g., Hidden Values Inc. v. Wade*, No. 3:11-cv-1917-L, 2012 WL 1836087 at *8–*10 (N.D. Tex. May 18, 2012); *NuVasive, Inc. v. Renaissance Surgical Ctr. North, L.P.*, 853 F. Supp. 2d 654, 661–63 (S.D. Tex. 2012); *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 648–49 (S.D. Tex. 2009); *see also White v. Zhou Pei*, 452 S.W.3d 527, 538 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting that a confidential or fiduciary relationship "is but one of the situations under which the duty [to disclose] may arise.").

recorded (allegedly in an effort to later claim a right to full payment directly from Hypower).

Accepting these allegations as true, the facts plausibly suggest that Far West had a duty of

disclosure under the circumstances.  *E.g.*, *Pellegrini v. Cliftwood-Blue Moon Joint Venture, Inc.*,

115 S.W.3d 577, 580 (Tex.App.—Beaumont, no pet.) (citations omitted) (noting that the

circumstances of a particular case may give rise to "a legal duty of disclosure in arm's-length

transactions when a partial disclosure has created a false impression.").

   The remainder of Hypower's fraud by nondisclosure claim tracks the other factors thereof

under Texas law, *i.e.* materiality, knowledge of the other party's ignorance, deliberate silence,

intention to induce action or non-action, reliance, and damages.  [Doc. # 57, pp. 20–21].  Far

West claims that Hypower fails to allege that material information was withheld or that Hypower

sustained any injury.  [Doc. # 61-1, pp. 6–8].  Again, the court disagrees. The allegations of

Hypower's complaint state that, had Hypower known of Far West's existing factoring agreement

with Crider, or had Hypower known that Far West was recording the calls, it would not have

"confirmed" Crider's invoices.  [Doc. #57, pp. 19–20, ¶¶ 73–75].  Thus, the materiality element

is adequately alleged.  *White v. Zhou Pei*, 452 S.W.3d 527, 538 (Tex. App.—Houston

[14th Dist.] 2014, no pet.) ("Information is considered 'material' if it is such that a reasonable

person would attach importance to it and would be induced to act on it in determining his choice

of actions in the matter") (citations omitted).   As for legal injury, Hypower expressly alleges that

"Hypower has been exposed to liability in [the Far West suit] and in the Miller Act claim, and

has allegedly waived rights that it possessed under the terms of the Subcontract." *Id.* at 21, ¶ 80.

Although it has not yet been determined whether Hypower is liable to Far West, or whether ICSP

is liable to Paquin, the court cannot state that Hypower or ICSP will never be able to establish

-17-

injury.  If Hypower is found to be liable to Far West for the full amount of Crider's invoices, or if ICSP is found to be liable to Paquin, it will be for the trier of fact to decide whether and to what extent such liability arose as a result of Hypower's acting without knowledge of facts withheld by Far West.  *See Strickland Grp., Inc. v. Pathfinder Exploration, LLC*, No. 02-12-187-CV, 2013 WL 4773363 at *11–*12 (Tex. App.—Fort Worth Sep. 5, 2013, no pet.) (analyzing injury prong based on jury's factual determinations).  At this stage of the litigation, Hypower and ICSP's allegations adequately state a claim for fraud by nondisclosure under Texas law.

The fraud by nondisclosure claims likewise survive under Louisiana law.  The Louisiana Civil Code defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."  LA. CIV. CODE ANN. art. 1953.  "Fraud may also result from silence or inaction."  *Id.* Here, Hypower and ICSP do not claim to have a contractual relationship with Far West, so the "delictual" fraud standard is applicable, not that of "contractual" fraud.[9]  The elements of a delictual fraud/intentional misrepresentation claim in Louisiana are: "(1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury."  *Kadlec Med. Ctr. v. Lakeview Anesthesia Associates,* 527 F.3d 412, 418 (5th Cir. 2008) (footnote omitted).  "To establish a claim for intentional misrepresentation when it is by silence or inaction, plaintiffs also must show that the defendant owed a duty to the plaintiff to disclose the information."  *Id.* (citing *Greene v. Gulf Coast Bank*, 593 So. 2d 630, 632 (La. 1992)).

---

[9] *See, e.g.,  Douglas v. Renola Equity Fund II, LLC*, Civil Action No. 13-6192, 2014 WL 1050851 at *4–*6 (E.D. La. March 14, 2014) (discussing the difference between delictual and contractual fraud).

The existence of a duty to speak is a question of law. *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1384 (La. 1990)).  Far West insists that, in order for there to be a duty to disclose in Louisiana, the parties must be in contractual privity or there must be a fiduciary relationship, and because neither situation is present here, then Hypower cannot make out a fraud claim under Louisiana law. [Doc. #27, pp. 5–7].   It is true that Louisiana courts do not recognize an affirmative duty to disclose information "absent some confidential, fiduciary, or other special relationship which, under the circumstances of the case, justify the imposition of a duty to disclose information." *Southern Serv. Corp. v. Tidy Bldg. Serv., Inc.*, No. Civ. A. 04-1362, 2004 WL 2784909 at *5 (E.D. La. Dec. 1, 2004) (citations omitted); *see also Greene*, 593 So. 2d at 632; *Bunge*, 557 So. 2d at 1383.  But where a party voluntarily speaks or conveys information that may influence the conduct of the other party, then the speaker is bound to disclose the whole truth.  *Kadlec*, 527 F.3d at 419 (citing *Am. Guar. Co. v. Sunset Realty & Planting Co.*, 208 La. 772, 23 So.2d 409, 455–56 (1944)).  The latter situation is exactly what Hypower alleges to have occurred here.  Accordingly, the facts, as alleged, plausibly suggest that Far West had a duty to disclose the whole truth under Louisiana law.  The court is also satisfied that Hypower's factual allegations meet the three specific elements of a Louisiana intentional misrepresentation claim, *i.e.* "(1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury." *Kadlec*, 527 F.3d at 418.

Accordingly, to the extent Far West seeks dismissal of Hypower and ICSP's fraud by nondisclosure claims, such relief is **DENIED**.

-19-

### 3. *Indemnity*

Article XX of the Hypower–Crider Subcontract obligates Crider to indemnify, defend, and hold Hypower harmless:

> from all claims, losses, demands, causes of action and the like (including attorney's fees, expert witness fees and all dispute procedure costs), which may be asserted against [Hypower] or its Surety by anyone other than [Crider], and resulting from or occurring in connection with the failure of [Crider], or any party for whom [Crider] is responsible, to perform all Work required within the scope of this Subcontract in strict accordance with the Subcontract and Contract Documents.

[Doc. #57-1, p. 13].  Hypower claims that, "because Far West seeks to assume Crider's payment rights under the Subcontract, Far West must also fulfill Crider's obligation to defend and indemnify Hypower for claims of non-payment asserted by Crider's subcontractor, Paquin, in the Miller Act Claim." [Doc. #57, ¶ 85].[10]  Far West argues that Hypower's claim fails to plausibly allege that Far West assumed Crider's indemnity obligations as a matter of law. [Doc. #27, p. 5; Doc. #61-1, pp. 8–9].  The court agrees with Far West.

Hypower's pleadings and motion papers are devoid of any legal support for the proposition that when an account receivable is assigned, the assignee automatically assumes indemnity obligations to which the assignor agreed in its contract with the account debtor.  Under the law of both Texas and Louisiana, that claim fails.  In Texas, "[i]t is axiomatic that an assignee walks in the shoes of his assignor and that he takes the contract subject to all *defenses* which the opposing party may be able to assert against his assignor." *Irrigation Ass'n v. First Nat'l Bank of Frisco*, 773 S.W.2d 346, 348 (Tex. App.—Dallas 1989, writ denied) (emphasis added); *see also* Tex. Bus. and Commerce Code § 9.404(a).  But "[t]he assignee of a contract is

---

[10] Again, because ICSP makes the same claim for indemnity against Far West, the court's analysis applies equally to ICSP's claim. [Doc. # 16, p. 15, ¶ 57].

not responsible for the assignor's *obligations* unless he expressly or impliedly assumes them." *Weaver and Tidwell, L.L.P. v. Guarantee Co. of N. Am. USA*, 427 S.W.3d 559, 570 (Tex. App.—Dallas Apr. 8, 2014, pet. denied) (emphasis added) (citation omitted).  Indeed, subject to certain exceptions that are not applicable here, "the claim of an account debtor against an assignor may be asserted against an assignee . . . *only to reduce the amount the account debtor owes.*"  Tex. Bus. and Commerce Code § 9.404(b) (emphasis added).  Louisiana law treats assignments in substantially the same fashion.  *Joslyn Mfg Co. v. Koppers Co., Inc.*, 40 F.3d 750, 755 (5th Cir. 1994) ("Under Louisiana law, an assignee is only bound to the extent of the obligations assumed."); *see also* LA. CIV. CODE arts 1821–24;  La. R.S. § 10:9-404.

Here, Hypower's entire argument is that because Crider assigned Far West its accounts receivable, it necessarily assigned its indemnity obligation as well, and because Crider did not pay Paquin and instructed Hypower not to pay him, then the indemnity provision is applicable . [*See* Doc. #16, p. 15, ¶ 57; Doc. #33, pp. 7–8, ¶ 21; Doc. #57, p. 22, ¶ 84; Doc. # 63, pp. 9–10; Doc. #70, p. 8].  Even accepting Hypower's allegations as true, there is nothing to plausibly suggest that Far West expressly or impliedly assumed Crider's obligation to indemnify Hypower from claims related to Crider's work on the project.  As such, to the extent Far West seeks dismissal of Hypower and ICSP's indemnity claims, such relief is **GRANTED**.

## III. CONCLUSION

For the foregoing reasons:

**IT IS ORDERED** that Far West's motions to dismiss, [Docs. ## 27, 61], be and are hereby **GRANTED IN PART AND DENIED IN PART**, as follows:

Far West's motion to dismiss of ICSP's third-party demand, [Doc. #27], is **DENIED** to the extent it seeks dismissal of ICSP's claims for lack of subject matter jurisdiction;

Far West's motions to dismiss Hypower's counterclaim and ICSP's third-party demand [Docs. ##27, 61], are **DENIED** to the extent they seek dismissal of the fraud by nondisclosure claims for failure to state a claim for which relief may be granted;

Far West's motions to dismiss Hypower's counterclaim and ICSP's third-party demand [Docs. ##27, 61] are **GRANTED** to the extent they seek dismissal of the indemnity claims for failure to state a claim upon which relief may be granted. Accordingly, **IT IS FURTHER ORDERED** that Hypower and ICSP's indemnity claims against Far West be and are hereby **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ___1___ day of _April_, 2016.


_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE