RECEIVED

APR 2 6 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY: _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA,<br>FOR THE USE AND BENEFIT OF<br>JOHN PAQUIN D/B/A ARMADILLO<br>CONSTRUCTION, *et. al* | : | No: 5:15-CV-81 (LEAD)<br>c/w No. 5:15-cv-1744 (MEMBER) |
| | : | JUDGE DONALD E. WALTER |
| VERSUS | : | MAGISTRATE JUDGE KAREN HAYES |
| INSURANCE COMPANY OF THE<br>STATE OF PENNSYLVANIA *et al.* | : | |

## MEMORANDUM RULING

Before the court is a "Special Appearance and Motion to Dismiss Pursuant to Fed. R. Civ.

Pro. 12(b)(2), 12(b)(5), and 12(b)(6)" filed by defendant Joshua Kuphal ("Kuphal"). [Doc. #76].

Kuphal seeks dismissal of the claims asserted against him in the Third Amended Complaint,

[Doc. #66], filed by plaintiff DSCH Capital Partners, LLC, d/b/a Far West Capital ("Far West").[1]

For the following reasons, Kuphal's motion to dismiss, [Doc. #76] is **DENIED**.

### I. BACKGROUND

Hypower, Inc. ("Hypower"), a Florida corporation, was the general contractor on a

construction project located in Shreveport, Louisiana ("the project"). [Doc. #66, pp. 1–3].

Hypower entered into a subcontract with Crider Americas Solar, LLC, ("Crider"), a company

based in Texas. *Id.* at 3, ¶ 11. Hypower terminated Crider in January 2014, and did not pay

Crider for all of its work. *Id.* at 5, ¶ 19.

---

[1] The court hereby **GRANTS** Kuphal's motion for leave to file the reply brief , [Doc. #79], because the brief's arguments and the information contained in the attached affidavit are necessary for purposes of a complete consideration of the issues before the court. However, Far West's objections to this filing are noted. [Doc. #80]. Counsel for Kuphal are instructed that, going forward, the court will not be as lenient with regard to failure to timely submit arguments and affidavit evidence.

Plaintiff Far West, which is based in Texas, provides working capital to construction companies through accounts receivable "factoring."[2] *Id.* at 2, ¶ 8. Far West claims that it bought Crider's invoices from the project, thereby acquiring Crider's payment rights. *Id.* at 2–6. In January 2014, after Hypower terminated Crider from the project, Far West sued Hypower in Texas state court seeking full payment for Crider's invoices. [Doc. #81, p. 5]. That lawsuit was later removed to the United States District Court for the Western District of Texas, transferred to the Western District of Louisiana, and consolidated with the above-captioned case. *Id.* at 6–7.

Kuphal was Hypower's designated project manager in Shreveport. [Doc. #66, p. 5, ¶ 17]. Kuphal is an employee of Hypower and a Florida domiciliary. *Id.* at 2, ¶ 3. According to Kuphal, he worked on-site in Shreveport "one hundred percent of the time" while the project was ongoing, although he claims that he would return home to Florida on a regular basis during that time. [Doc. #78-1, pp. 4–5; *see also* Doc. #76-1, p. 5]. It is undisputed that Kuphal only came to Louisiana to work on the project, and that he went back to Florida when his work was finished. [Doc. #76-1, p. 5; *see also* Doc. #79-3, p. 2].

In its original state court petition, Far West named Kuphal personally as a defendant. [Doc. #81, p. 5, n. 4]. Since then, however, Kuphal has been dismissed from the litigation, re-added, then dismissed again. Specifically, on March 19, 2014, all claims against Kuphal were withdrawn, without prejudice, via a notice of non-suit filed by Far West. *Id.* Upon removal to the Western District of Texas, Far West reasserted claims against Kuphal in its First Amended Complaint. *Id.* Kuphal then moved to dismiss the claims against him for lack of personal

---

[2] Factoring is"[t]he buying of accounts receivable at a discount." *Factoring*, BLACK'S LAW DICTIONARY (10th ed. 2014). "The price is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable." *Id.*

jurisdiction.  *Id.*  Far West did not oppose the motion, and the claims against Kuphal were dismissed without prejudice.  *Id.*  However, in its Third Amended Complaint, which was filed after the case was transferred to the Western District of Louisiana, Far West added Kuphal as a defendant for the third time.  [Doc. #66, p. 2, ¶ 3].

Far West's claims against Kuphal are based on several telephone conversations he had with Far West's employees during which Crider's invoices from the project were discussed. According to Far West, its employees initiated these phone calls pursuant to "internal due diligence practices," by which "Far West typically 'pre-verifies' or 'pre-confirms' accounts, or demands other assurances directly from its clients' customers, before purchasing an account." [Doc. #66, pp. 4–5, ¶ 16].  Far West alleges that Kuphal made certain assurances during the calls, including: (1) that Crider had performed (and Hypower had approved) all of the work listed in the invoices; (2) that the amounts listed on the invoices were accurate; (3) that the project was in good standing; and (4) that "the invoices would be paid in full and the amounts identified would not be reduced as a result of any claims against Crider for damages, back-charges, or other offenses."  *Id.*, ¶ 17.  Far West argues that Kuphal's assurances amounted to knowingly false statements and omissions of material information, such that Kuphal and Hypower are liable for the damages Far West suffered when the invoices were not paid.  *Id.* at 7–11. The claims against Kuphal personally are for the torts of fraud, fraud by nondisclosure, and negligent misrepresentation.  *Id.*

## II. LAW & ANALYSIS

Kuphal seeks dismissal of Far West's claims for three reasons.  [Doc. #76].  First, Kuphal points to the undisputed fact that all of his activities in Louisiana were as an employee Hypower.

-3-

*Id.* at 3–5. Therefore, Kuphal claims that the court lacks personal jurisdiction over him pursuant to the "fiduciary shield" doctrine, and that dismissal is therefore warranted under Federal Rule of Civil Procedure 12(b)(2). *Id.* Second, Kuphal argues that because he was acting as an agent for Hypower, a disclosed principal, then Kuphal cannot be personally liable to Far West. *Id.* at 5–7. As such, Kuphal argues that Far West fails to state a claim for which relief may be granted, and dismissal is therefore appropriate under Rule 12(b)(6). *Id.* Third, Kuphal argues that Far West failed to properly serve Kuphal with process, thus mandating dismissal under Rule 12(b)(5). *Id.* at 7–8. Each of Kuphal's claims will be addressed in turn.

**A. Motion to Dismiss Under Rule 12(b)(2)**

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). Louisiana's long-arm statute extends to the limits permitted by the United States Constitution. La. R.S. § 13:3201(B). Consequently, the two inquiries for the exercise of personal jurisdiction "merge into one," *i.e.* whether exercising jurisdiction is consistent with due process. *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002). The plaintiff bears the burden of establishing personal jurisdiction by *prima facie* evidence, and the court is to resolve all relevant factual disputes in plaintiff's favor. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) (citations omitted).

There are two types of personal jurisdiction: specific and general. Specific jurisdiction exists when the plaintiff's cause of action arises from or is related to the defendant's minimum

contacts, whereas general jurisdiction exists when a defendant has engaged in continuous and

systematic activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

U.S. 408, 414 nn. 8–9 (1984). Here, all of Far West's claims against Kuphal arise from his

alleged minimum contacts with Louisiana, so the applicable inquiry is whether there is specific

jurisdiction.[3]

The Fifth Circuit has articulated a three-step analysis for specific jurisdiction, whereby

the court is to consider:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether
> it purposely directed its activities toward the forum state or purposely availed itself
> of the privileges of conducting activities there; (2) whether the plaintiff's cause of
> action arises from the defendant's forum-related contacts; and (3) whether the
> exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone*, 310 F.3d at 378 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474

(1985)). If the plaintiff successfully establishes the first two prongs, the burden shifts to the

defendant to make a "compelling case" that the exercise of personal jurisdiction would be unfair

or unreasonable. *Nuovo Pignone*, 310 F.3d at 382 (citations omitted).

A defendant has minimum contacts with a forum state if "the defendant's conduct and

connection with the forum state are such that he should reasonably anticipate being haled into

---

[3] Far West does briefly argue that there is general jurisdiction, [Doc. #78, p. 3], but that argument is easily rejected. It is undisputed that Kuphal was in Louisiana for the sole purpose of managing the project and nothing more. Although he did so on-site in Shreveport for an extended period, this does not come close to being the type of "continuous and systematic" activity in the forum that would subject Kuphal to any and all suits in Louisiana. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n. 6 (2014) ("'[G]eneral' or 'all purpose' jurisdiction . . . permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile).").  It cannot seriously be argued that Kuphal's presence in Louisiana was anything other than transitory and targeted. Furthermore, because Kuphal retained his Florida domicile and would return home to Florida while the project was ongoing, Kuphal was and remains subject to the general jurisdiction of Florida, not Louisiana. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]").

-5-

court there." *Burger King*, 471 U.S. at 474 (quoting *World–Wide Volkswagen v. Woodson*, 444

U.S. 286, 297 (1980)). "Even where a defendant has no physical presence in the forum state, a

single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises

from the contact." *Nuovo Pignone*, 310 F.3d at 379 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S.

220, 222 (1957)). In particular,

> [w]hen a nonresident defendant commits a tort within the state, or an act outside the
> state that causes tortious injury within the state, that tortious conduct amounts to
> sufficient minimum contacts with the state by the defendant to constitutionally permit
> courts within that state, including federal courts, to exercise personal adjudicative
> jurisdiction over the tortfeasor and the causes of actions arising from its offenses or
> quasi-offenses.

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999) (citations omitted).

As previously stated, Kuphal argues that the "fiduciary shield doctrine" prevents a finding

of specific personal jurisdiction over him. The fiduciary shield doctrine, as recognized in the

Fifth Circuit, "holds that an individual's transaction of business within the [forum] state solely as

a corporate officer does not create personal jurisdiction over that individual though the state has

in personam jurisdiction over the corporation . . . ." *Stuart v. Spademan*, 772 F.2d 1185, 1197

(5th Cir. 1985). The *Stuart* court further explained that, under the fiduciary shield doctrine,

"jurisdiction over an individual cannot be predicated on jurisdiction over a corporation. *Id.* at

n. 11 (citations omitted). Likewise, the Louisiana Supreme Court has held that the fiduciary

shield doctrine "requires a court to look to the individual and personal contacts, if any, of the

officer or employee, with the forum state." *Southwest Wireless Network, Inc. v. U.S. Telemetry

Corp.*, 2006-1738, p. 11 (La. 4/11/07); 954 So. 2d 120, 128 (*citing Escoto v. U.S. Lending Corp.*,

95-2692 (La. App. 4 Cir. 5/22/96); 675 So. 2d 741).

Kuphal argues that the fiduciary shield doctrine applies in this case because his activities in Louisiana were undertaken solely as an employee of Hypower and not in his "individual capacity." [Doc. #66, pp. 4–5]. The court disagrees, and finds the doctrine to be inapplicable here. Kuphal is correct that personal jurisdiction over Hypower cannot, by itself, confer jurisdiction over its officers and employees individually. *Southwest Wireless*, 954 So. 2d at 128. But Far West is not arguing that personal jurisdiction over Hypower means that there is automatically jurisdiction over its officers and employees. Rather, Far West claims that the court has personal jurisdiction over Kuphal based on his own personal contacts with Louisiana, *i.e.* his extended on-site presence in Shreveport and his alleged commission of torts in the course of his project management. [Doc. #78 pp. 4–5]. Such a basis for personal jurisdiction is not an improper imputation of a corporation's contacts to its employee, because it is the employee's own allegedly tortious conduct within the forum that is at issue.

Well-established precedent supports this conclusion. As the Supreme Court has made clear, although employees' contacts with a forum cannot be judged according to their employer's activities, "their status as employees does not somehow insulate them from jurisdiction" if employees are the primary participants in alleged wrongdoing in the forum state. *Calder v. Jones*, 465 U.S. 783, 790 (1984). Likewise, the Fifth Circuit has held that, for purposes of the personal jurisdictional analysis, it is "immaterial" that a tort was committed in the course and scope of the defendant's corporate employment. *Seiferth*, 472 F.3d at 272, 275–76. Consistent with these holdings, this court has consistently recognized that the fiduciary shield doctrine does not apply where, as here, the nonresident corporate employee is alleged to have acted fraudulently or tortiously in the forum state. *See Duck Commander, Inc. v. TNP Productions,*

*Inc.*, Civil Action No. 2011 WL 4973880 at \*2 (W.D. La. Sep. 12, 2011); *Hudleston v. Rin Tin Tin, Inc.*, Civil Action No. 11-1427, 2011 WL 4502907 at \*2 (W.D. La. Sep. 1, 2011); *Bilyeu v. Johanson Berenson, LLP*, Civil Action No. 08-2006, 2010 WL 3896415 at \*4 (W.D. La. Sep. 30, 2010); *cf. Sousa ex rel. Sousa v. Prosser*, No. Civ.A. 03-2942, 2004 WL 1497764 at \*3–\*4 (E.D. La. July 1, 2004) (finding that fiduciary shield doctrine protected Vice President of a Michigan Hospital because he had no personal contacts with Louisiana apart from management of a program sending surgical residents to a hospital in New Orleans). Here, because Kuphal is alleged to be the primary participant in fraudulent and tortious conduct within Louisiana, the fiduciary shield doctrine does not affect the jurisdictional analysis.

As for whether Kuphal's contacts are themselves sufficient for a finding of specific jurisdiction, there is no real dispute on this point. Kuphal managed a major construction project in Louisiana, on-site on a daily basis. That clearly constitutes purposeful direction of activities to Louisiana, and purposeful availment of its laws, such that Kuphal should reasonably have expected to be sued in Louisiana for any torts he committed in the course of his project management. Additionally, Far West's tort claims arise directly from Kuphal's forum-related contacts, because his allegedly false statements and omissions were made in Louisiana while managing the project. Thus, the court finds that Far West has carried its burden of presenting *prima facie* evidence that Kuphal had sufficient minimum contacts with Louisiana.

The court also finds that Kuphal fails to make a "compelling case" that asserting jurisdiction over him would be unfair or unreasonable. *Nuovo Pignone*, 310 F.3d at 382. In determining whether the exercise of jurisdiction is fair and reasonable, courts look to: "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's

-8-

interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies." *Id.* (citing *Felch v. Transportes Lar–Mex SA de CV*, 92 F.3d 320, 324 (5th Cir. 1996)).[4]  These factors all indicate that exercising jurisdiction over Kuphal is fair and reasonable, particularly in light of the fact that significant judicial resources have been expended to have this complicated, multi-party dispute transferred to one court and consolidated before one judge.  It is fair to require Kuphal to defend the claims against him arising out of that dispute in the same forum.  If Far West had to sue Kuphal separately, the interest of the interstate judicial system to have this controversy efficiently resolved would be directly hindered.

In sum, the court finds that it has personal jurisdiction over the claims against Kuphal, and therefore Kuphal's motion to dismiss pursuant to Rule 12(b)(2) is **DENIED**.

## B. Motion to Dismiss Under Rule 12(b)(6)

In addition to his personal jurisdiction arguments, Kuphal asserts that Far West fails to state claims for which relief may be granted, because all of his alleged actions were made as a representative of Hypower.  [Doc. #78, pp. 5–7].  Kuphal claims that, because Far West was aware of Kuphal's representative capacity, then he cannot be held individually liable and

---

[4] Kuphal does not engage in any meaningful discussion of these elements in his reply brief. [Doc. #79-1, p. 7].  Kuphal simply argues that "[i]t is unfair and unreasonable to require him to personally appear in this litigation once again to defend against unsupported claims," and that Far West would not be burdened by having to pursue Kuphal in another forum because "it could have contested jurisdiction and venue, or appealed case consolidation, at various stages throughout this litigation, but chose rather to be silent." *Id.*  These arguments fall flat.  First, there has been no finding that Far West's claims lack merit or are "unsupported."  Furthermore, even a cursory review of the record in this case reveals that Far West was not "silent" with respect to jurisdiction, venue, or consolidation.  Far West vigorously opposed Hypower's motion to transfer venue and Hypower's motion to consolidate.  In any event, the court does not consider Far West's decision not to object to the Magistrate Judge's order of consolidation as somehow evincing that Far West would not be burdened by litigating its claims against Kuphal simultaneously in another forum.

dismissal is therefore appropriate under Rule 12(b)(6). *Id.*

Far West has stated an actionable claim. Kuphal mistakenly relies on the general rule that an agent who *contracts* on behalf of a disclosed principal is not personally bound for the principal's contractual obligations. *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995); *see also* LA. CIV. CODE art. 3016. Here, by contrast, Far West does not claim that Kuphal is personally bound for any contractual obligation of Hypower. Rather, Far West claims that Kuphal is liable in tort for making knowingly false statements, material omissions, and negligent misrepresentations. [Doc. #66, pp. 7–11]. The fact that Far West expressly alleges that Kuphal made those statements in the course and scope of his employment in no way defeats Far West's claims. *See, e.g.*, *Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex.App.—Corpus Christi 2002, pet. denied) ("The law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation."); *see also Ogea v. Merritt*, 2013-1085, p. 17 (La. 12/10/13); 130 So. 3d 888, 901 (quoting *H.B. "Buster" Hughes, Inc. v. Bernard*, 318 So. 2d 9, 12 (La. 1975)) ("The law is settled that if an officer or agent of a corporation through his fault injures another to whom he owes a personal duty, whether or not the act culminating in the injury is committed by or for the corporation, the officer or agent is liable personally to the injured third person, and it does not matter that liability might also attach to the corporation."). Accordingly, because Far West has stated an actionable claim against Kuphal, his motion to dismiss under Rule 12(b)(6) is **DENIED**.[5]

---

[5] In his reply brief , Kuphal belatedly argues that Far West failed to allege its fraud claims with sufficient particularity, and therefore dismissal is warranted under Rule 9(b). To the extent that Kuphal did not waive this argument by failing to raise it in its initial motion, it nonetheless fails. The court is

-10-

## C. Motion to Dismiss Under Rule 12(b)(5)

Kuphal argues that Far West's service failed to properly serve him under the federal rules, and therefore dismissal is appropriate under Rule 12(b)(5). [Doc. #76-1, pp. 7–8]. Service in federal court is governed under Rule 4. When a defendant timely objects to the sufficiency of service of process, the plaintiff bears the burden of establishing its validity. *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).

In Far West's "Affidavit of Service," counsel states that the complaint and summons were served on Kuphal via certified mail at his residence in Fort Lauderdale, Florida. [Doc. #72, p. 1]. The return receipt for that certified mailing shows the signature of a woman named Kristi Emery. [Doc. #72-1, p. 2]. Far West also sent the complaint and summons to Kuphal's office in Fort Lauderdale, [Doc. #72, p. 2], and the return receipt for that mailing was signed by a woman named Lilly Camacho. [Doc. #72-2, p. 2]. Far West additionally sent a copy of the complaint and summons to Kuphal via electronic mail. [Doc. #72, p. 2].

Kuphal claims that Ms. Emery does not reside with him, and neither Ms. Emery nor Ms. Camacho are authorized to receive service on his behalf. [Doc. #76-1, pp. 7–8]. Additionally, Kuphal points out that service by e-mail is not authorized under Rule 4 or state law, nor has Far West requested such relief from the court. *Id.* In response, Far West argues that service by certified mail on nonresidents is allowed under Louisiana law, La. R.S. § 13:3204(A), and therefore its service complied with Rule 4(e)(1). [Doc. #78, pp. 8–10]. Alternatively, Far West argues that even if its service was technically insufficient, the court should merely quash service in lieu of dismissal. *Id.* In reply, Kuphal asserts that the address to which Far West attempted

---

satisfied that Far West's fraud allegations meet the heightened pleading standards of Rule 9(b).

service was *not* his address, although he does provide his current, correct address. [Doc. #79-1, pp. 8–9; Doc. #79-3, p. 1].

Based on the evidence before the court, it appears that the complaint and summons were sent to an incorrect residential address. Accordingly, the service did not comply with the Louisiana statute providing for service on nonresident defendants by certified mail. *E.g.*, *Grace v. Myers*, Civil Action No. 15-300, 2015 WL 4939893 at *4–*5 (M.D. La. Aug. 18, 2015). Furthermore, the service at Kuphal's workplace was not proper. *Drago v. Drago*, 477 So. 2d 786, 788 (La. App. 5 Cir. 1985). However, despite the fact that service of process was deficient, the court does not find dismissal to be warranted under the circumstances. As this court has explained:

> If process has not been properly served on a defendant, the district court has broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process and afford the plaintiff another opportunity to effect service. When a court finds that service is insufficient but the insufficiency is curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant. Dismissal of the complaint itself is inappropriate where there exists a reasonable prospect that service may be obtained. Ultimately, whether to dismiss an action or quash and allow for service to be re-attempted is within the broad discretion of the district court.

*Richard v. City of Port Barre*, Civil Action No. 6:14-cv-02427, 2015 WL 566898 at *2 (W.D. La. Jan. 20, 2015) (footnotes and internal quotation marks omitted). Here, because Kuphal has now provided his correct address, the court finds that the insufficient service is curable and there is more than a reasonable prospect that proper service will be obtained. Furthermore, there is no suggestion that the prior mailing to the wrong address resulted in prejudice. Accordingly, the court will quash service in lieu of dismissal. Kuphal's motion to dismiss under Rule 12(b)(5) is therefore **DENIED**.

### III. Conclusion

For the foregoing reasons:

**IT IS ORDERED** that Kuphal's Special Appearance and Motion to Dismiss, [Doc. #76],

be and is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the prior service on Kuphal, [Doc. #72], be and is

hereby **QUASHED**.  Far West shall have 30 days from the date of this order to re-attempt service

on Kuphal

**THUS DONE AND SIGNED,** in chambers, in Shreveport, Louisiana, this ⎯25⎯ day

of ⎯⎯⎯⎯ 2016.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

-13-