UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | : | No: 5:15-CV-81 (LEAD) |
| FOR THE USE AND BENEFIT OF | | c/w No. 5:15-cv-1744 (MEMBER) |
| JOHN PAQUIN D/B/A ARMADILLO | | |
| CONSTRUCTION, *et. al* | : | |
| VERSUS | : | MAGISTRATE JUDGE KAREN HAYES |
| INSURANCE COMPANY OF THE | | |
| STATE OF PENNSYLVANIA, *et al.* | : | JUDGE DONALD E. WALTER |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment, filed by defendants, Hypower, Inc. ("Hypower") and Joshua Kuphal ("Kuphal"), seeking dismissal of the remaining claims of DSCH Capital Partners, LLC d/b/a Far West Capital ("Far West"). [Doc. #115]. Far West opposes the motion. [Doc. #116]. For the following reasons, Hypower and Kuphal's motion is **GRANTED IN PART AND DENIED IN PART**.

**I. BACKGROUND[1]**

**A. The Project**

This consolidated case concerns a federal construction project at the Overton Brooks Veterans Administration Medical Center in Shreveport, Louisiana ("the Project"). [Doc. #66, p. 3]. The purpose of the project was to install solar carport structures. *Id.* Hypower, the general contractor for the Project, subcontracted with Crider Americas Solar, LLC ("Crider"), to design, manufacture, engineer, and install the solar carports ("Hypower-Crider Subcontract"). *Id.*; [*see*

---

[1] The relevant charging document is now Far West's Fourth Amended Complaint [Doc. # 119], in which the facts are repeated as alleged in the Third Amended Complaint. [Doc. #66]. For purposes of this ruling, all record citations are to the Third Amended Complaint.

-1-

*also* Doc. #57-1, pp. 2–8]. Crider began its on-site work in September of 2013. [Doc. #66, p. 4]. Hypower ultimately became dissatisfied with Crider's performance, alleging that he did not adhere to the Project's progress schedule or timely pay his vendors and sub-subcontractors. [Doc. #57, p. 5]. Hypower terminated Crider in January of 2014. [Doc. #66, p. 5].

**B. Crider's Assignment of Invoices to Far West**

In September of 2011, well before the project was underway, Crider entered into a purchasing agreement ("Purchasing Agreement") with Far West, a Texas limited liability company. [Doc. #66, p. 3]. Far West describes the nature of its business as "provid[ing] working capital funds to companies, primarily through accounts receivable factoring." *Id.* at 3. The Purchasing Agreement between Far West and Crider provided that, "[u]pon the sale and assignment of any account, Far West would advance funds to Crider, and in return would become the sole and absolute owner of the account in question." *Id.* Additionally, the Purchasing Agreement contained a clause requiring Crider to repurchase any account disputed by an account debtor. [Doc. # 115-10, pp. 6-7].

Far West claims that Crider assigned it all invoices from the project. [Doc. #66, pp. 4–5]. Far West further alleges that it notified Hypower of Crider's assignment in October of 2013. *Id.* at 4.

**C. Far West's Remaining Claims**

According to Far West, in October and November of 2013, two of its employees called Kuphal, Hypower's project manager, to confirm that Hypower would pay Crider for the invoices at issue (Invoice No. 1106 for $387,000.70, and Invoice No. 110R for $293,141.39). *Id.* at 5, 15-16. Shortly after these conversations allegedly took place, Hypower terminated Crider's

Subcontract agreement. [Doc. #66, p.5]. Far West contends that the statements Kuphal made during these conversations were false, and therefore constituted promissory estoppel, negligent misrepresentation, common law fraud (affirmative misrepresentation), and fraud by non-disclosure. *Id.* at 7-11. In addition to bringing these claims against Kuphal, Far West also seeks to recover against Hypower pursuant to the doctrine of respondeat superior. *Id*. at 11.

In their motion for summary judgment, Hypower and Kuphal contend that Far West's promissory estoppel, negligent misrepresentation, common law fraud, and fraud by non-disclosure claims must fail because Far West's reliance on Kuphal's statements was unjustified. Additionally, Hypower and Kuphal assert that Far West's promissory estoppel and negligent misrepresentation claims are barred by the economic loss rule. [Doc. #115-1, pp. 14-21]. In the event summary judgment is not granted, Hypower and Kuphal seek an offset credit against Far West for payments withheld from Crider under the Hypower-Crider Subcontract. [Doc. 115-1, p. 21-22].[2]

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] An issue is "genuine" if "the evidence is such

---

[2] Far West objects to the scope of the motion, arguing that it exceeds that which was discussed at the conference held on March 3, 2017, [Doc. #113], and allowed by the Court. [Doc. #116, pp. 19-20]. However, exercising its broad discretion to manage its docket, and in the interest of judicial economy and the efficient administration of justice, the Court finds that the issues have been properly and fairly briefed and are ripe for consideration, as indicated in this ruling.

[3] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue can be resolved only by a trier of fact because it may be resolved in favor of either party. *Id.* at 248-49. A fact is "material" if it can "affect the outcome of the suit under the governing law." *Id.* Facts that are irrelevant or unnecessary for determination of the suit should not be considered. *Id.* The substantive law will determine which facts are "material." *Id.*

The burden of proof in a summary judgment proceeding is on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). When a defendant moves for summary judgment on the plaintiff's claim, he may satisfy the summary judgment burden in one of two ways: (1) by showing there is no evidence to support an essential element of the plaintiff's claim, or (2) by submitting summary judgment evidence that negates one of the essential elements of the plaintiff's claim. *Celotex*, 477 U.S. at 322-24; *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). If the motion is properly made, the plaintiff "must set forth facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The plaintiff "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). The court is to resolve all reasonable doubts about the facts in favor of the plaintiff. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005).

### III. LAW & ANALYSIS

**A. Far West's Promissory Estoppel Claim**

Far West alleges that Kuphal promised, on Hypower's behalf, (1) that Crider had performed (and Hypower had approved) all of the work listed in the invoices; (2) that the

amounts due to Crider listed on the invoices were accurate; (3) that the project was in good standing; and (4) that the invoices "would be paid in full and the amounts identified would not be reduced as a result of any claims against Crider for damages, back-charges, or other offenses." [Doc. #66, p. 5]. Far West maintains that it relied on these statements to its detriment in purchasing the invoices from Crider. *Id*. In the instant motion, Hypower and Kuphal contend that Far West's reliance on Kuphal's statements was not reasonable, and thus that Far West fails to establish a requisite element of promissory estoppel. [Doc. #115-1, pp. 14-15].[4]

As a preliminary matter, Kuphal's first and second alleged statements (that the Project was in good standing, and that the labor, material and services supplied by Crider and reflected on each confirmed invoice had been furnished and accepted) are not grounds for a promissory estoppel claim because they are representations of existing facts, rather than future promises. *Clifton v. Ogle*, 526 S.W.2d 596, 603 (Tex. Civ. App. 1975) ("The difference of promissory estoppel from ordinary equitable estoppel is that the representation is promissory rather than as to an existing fact."); *see also Norris of Houston, Inc. v. Gafas*, 562 S.W.2d 894, 898 (Tex. Civ. App. 1978) (explaining that the doctrine of promissory estoppel applies to a promise to do something in the future when an actual promise has been made). Thus, only the third and fourth of Kuphal's alleged promises (that the confirmed invoices would be paid in full without any foreseeable offsets or deductions, and that Hypower would not assert any claims in reduction of

---

[4] Hypower and Kuphal also argue that summary judgment should be granted on Far West's promissory estoppel claim because it is barred by the economic loss rule. [Doc. 115-1, p. 21]. The economic loss rule provides that, "if a plaintiff only seeks to recover for the loss or damage to the subject matter of a contract, he cannot maintain *a tort action* against a defendant." *Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App. 2007) (emphasis added). Promissory estoppel is not a tort; it is an equitable doctrine. *See Eagle Metal Prod., LLC v. Keymark Enterprises, LLC*, 651 F.Supp.2d 577, 592 (N.D. Tex. 2009) ("The promissory estoppel claim is of a different order from the tort claims. Promissory estoppel is a quasi-contract theory . . . . This cause of action applies when a contract does not exist, but equity compels enforcement of the promise."). Thus, the economic loss rule has no bearing on the viability of a promissory estoppel claim.

the amounts payable to Far West) may be properly addressed under a promissory estoppel analysis.

It is established that Texas law controls in this case. [Doc. #81, pp. 13-14]. In Texas, a promissory estoppel claim requires (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promissee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). However, when "a valid contract between the parties covers the alleged promise, promissory estoppel is not applicable to that promise. Instead, the wronged party must seek damages under the contract." *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.*, 939 S.W.2d 695, 699 (Tex. App. 1997). Thus, "the doctrine of promissory estoppel may be invoked only where no contract on the subject matter exists." *Elite Ctr. For Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, No. 4:15-CV-00954, 2016 WL 6236328, at *1 (S.D. Tex. Oct. 24, 2016) (citing *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002)). This is because "parties should be bound by their express agreements, and when a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express terms of the agreement." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

Far West asserts promissory estoppel based on Kuphal's alleged promises that the confirmed invoices would be paid in full, without any foreseeable offsets or deductions; and that Hypower would not assert any claims in reduction of the amounts payable to Far West. Kuphal's alleged promises that Far West would be paid in full for the Crider accounts is covered by the

Hypower-Crider Subcontract.[5] Article X of the Subcontract entitles Hypower to deduct the costs incurred from Crider's breach of contract from the full amount owed on accounts. [Doc. #115-1 at 6-7; Doc. #115-4 at 10]. Because a valid contract controlling Far West's right to payment for the Hypower accounts exists, Far West cannot invoke the doctrine of promissory estoppel.

Furthermore, Far West had an obligation to exercise reasonable diligence in protecting its own interests by familiarizing itself with the applicable statutory law and the terms of the Hypower-Crider Subcontract before becoming Crider's assignee. *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App. 2012) ("A party to an arm's length transaction must exercise reasonable diligence in protecting his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party."); *see also Norris of Houston*, 562 S.W.2d at 898 ("One relying on estoppel must have exercised such reasonable diligence to acquire knowledge of the real facts as the circumstances of the case require. If he ignores highly suspicious circumstances which should warn him of danger or loss he cannot invoke the doctrine of estoppel."). Accordingly, Hypower and Kuphal's motion for summary judgment on Far West's promissory estoppel claim is **GRANTED**.

**B. Far West's Tort Claims**

    **1. Negligent Misrepresentation Claim**

Far West asserts that Kuphal's statements that the Project was in good standing and that Hypower would pay the accounts in full constituted negligent misrepresentation. Far West

---

[5] The terms of the Hypower-Crider Subcontract are controlling in Hypower's dealings with Far West because Far West is Crider's assignee. When Crider assigned the Hypower accounts to Far West, Far West assumed its rights as Crider's assignee "subject to all terms of the agreement between the account debtor [Hypower] and assignor [Crider] and any defense or claim in recoupment arising from the transaction that gave rise to the contract." Tex. Bus. & Com. Code § 9.404(a)(1).

characterizes its damages as "the payments made to Crider in reasonable and justifiable reliance on Far West/Kuphal's [sic] false representations and failure to disclose material information." [Doc. #116, p. 19]. Hypower and Kuphal argue that the economic loss rule bars Far West from recovering for negligent misrepresentation, and thus summary judgment should be granted. [Doc. #115-1, p. 20-21].[6]

Under the economic loss rule, "if a plaintiff only seeks to recover for the loss or damage to the subject matter of a contract, he cannot maintain a tort action against a defendant." *Sterling Chemicals*, 259 S.W.3d at 796. "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by the contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney, Corp., Inc.*, 2006 WL 2432309, at *5 (N.D.Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45–47 (Tex. 1998)). "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Courts in Texas have specifically addressed the application of the economic loss rule to negligent misrepresentation claims, holding that a plaintiff may not bring such a claim unless "the plaintiff can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *Sterling Chemicals*, 259 S.W.3d at 797.

---

[6] Because the economic loss rule precludes Far West from recovering for negligent misrepresentation, the Court does not reach Hypower and Kuphal's arguments on the merits.

Far West made the payments it alleges as damages pursuant to its Purchasing Agreement with Crider. The Purchasing Agreement states that, "[u]pon the sale and assignment of any account, Far West would advance funds to Crider, and in return would become the sole and absolute owner of the account in question." [Doc. #66, p. 3]. The Purchasing Agreement further provides that Crider must buy back invoices that are disputed by an account debtor (in this case, Hypower). [Doc. #115-10, pp. 6-7]. Thus, the injury Far West alleges (the loss of its payments to Crider) is an economic loss arising from Crider's breach of the Purchasing Agreement, and recoverable via a breach of contract claim. Furthermore, Far West's negligent misrepresentation claim also falls within the subject matter of the Hypower-Crider Subcontract. When Crider assigned its accounts to Far West, Far West assumed them subject to the terms of the Hypower-Crider Subcontract. Tex. Bus. & Com. Code § 9.404(a)(1). In the event that Crider breached the Subcontract by failing to perform the agreed upon work, the Subcontract entitles Hypower to withhold payment to Crider, and consequently to Crider's assignee, Far West. Because Far West's injury is not distinct from the economic losses recoverable under a breach of contract claim, its negligent misrepresentation claim sounds in contract and is consequently barred by the economic loss rule. For these reasons, Hypower and Kuphal's motion for summary judgment on Far West's negligent misrepresentation claim is **GRANTED**.

**2. Fraud Claims**

Far West maintains that "when the promises of payment in full were made [by Kuphal], Defendants had no intention of paying Far West. At all times, Defendants encouraged Far West to continue to advance funds to Crider, knowing that Hypower would eventually assert claims against Crider for breaches of the Subcontract Agreement." [Doc. #66, p. 8]. In essence, Far West asserts a claim for fraud in the inducement of a contract, in that it argues Hypower and

Kuphal made fraudulent representations to induce Far West to purchase accounts from Crider (and thereby to become Crider's assignee to the Hypower-Crider Subcontract). Although Far West frames its injury as common law fraud via affirmative misrepresentation and non-disclosure,"[f]raud claims that depend on the existence of an enforceable contract are properly styled as fraudulent inducement claims, not common law fraud claims." *Bohnsack v. Varco*, *L.P.*, 668 F.3d 262, 277 (5th Cir. 2012). Accordingly, the Court reads Far West's fraud allegations as a claim for fraudulent inducement.[7]

Fraudulent inducement is "a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001). Therefore, to prevail on a fraudulent inducement claim, a plaintiff must prove that there was "a misrepresentation; that defendant knew the representation was false and intended [to] induce plaintiff to enter into the contract through that misrepresentation; that plaintiff actually relied on the misrepresentation in entering into the contract; and that plaintiff's reliance led plaintiff to suffer an injury through entering into the contract." *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016) (quoting *Bohnsack*, 668 F.3d at 277).

In their motion for summary judgment, Hypower and Kuphal argue that Far West cannot establish the requisite elements of fraud (the same as those of fraudulent inducement) because

---

[7] Far West presents affirmative misrepresentation and fraud by non-disclosure as separate causes of action. However, insofar as Far West claims that Kuphal both (1) affirmatively misrepresented that the Project was in good standing and the invoices would be paid, and (2) failed to disclose that the Project was not in good standing and the invoices would not be paid, it makes converse arguments to establish the same fraudulence. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 182 (Tex. 1997) (inability to rely on asserted affirmative representations defeated accompanying fraudulent non-disclosure allegations that were "simply the converse of Schlumberger's affirmative misrepresentations"); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986) ("When the particular circumstances impose on a person a duty to speak and he deliberately remains silent, his silence is equivalent to a false representation."). Therefore, the Court treats both of Far West's fraud actions as subsumed within the fraudulent inducement claim.

Far West cannot prove that Kuphal made any false representations, and because Far West's reliance on Kuphal's statements was unjustified. [Doc. #115-1, pp. 18-20].[8] The Court finds that issues of material fact remain as to these elements. Accordingly, Far West's fraudulent inducement claim is not ripe for dismissal on the merits. Therefore, Hypower and Kuphal's motion for summary judgment regarding this issue is **DENIED**.[9]

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Hypower and Kuphal's Motion for Summary Judgment, [Doc. #115], is **GRANTED IN PART AND DENIED IN PART.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 24th day of April, 2017.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

---

[8] Hypower and Kuphal do not allege that Far West's fraud claims are barred by the economic loss rule. However, the Texas Supreme Court held in *Formosa* that the economic loss rule does not bar recovery for fraudulent inducement claims because "the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Formosa*, 960 S.W.2d at 46.

[9] Hypower and Kuphal's motion for summary judgment in regard to their entitlement to seek an offset credit for payments withheld from Crider per the Hypower-Crider Subcontract [Doc. #115-1, pp. 21-22] is **DENIED.**